734 P.2d 1042

**STATE of Arizona, Appellee,**

**v.**

**Sonny West COLE, Jr., Appellant.**

**No. 1 CA–CR 9535.**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 29, 1987.

Review Denied April 8, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel; Criminal Div., Georgia B. Ellexson, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

## OPINION

BROOKS, Judge.

Appellant (defendant) was charged by indictment with one count of theft of property with a value of $1,000 or more, a class 3 felony. The indictment alleged that defendant had knowingly controlled a 1985 Cadillac, property of Southwest Auto Auction, knowing or having reason to know that it was stolen, in violation of A.R.S. § 13–1802. A jury found defendant guilty as charged, and he was sentenced to 7.5 years imprisonment. The sole issue on appeal is whether the trial court committed fundamental error in its instructions to the jury. The facts, taken in a light most favorable to sustaining the jury's verdict, are as follows.

Defendant was employed by Southwest Auto Auction (Southwest), a wholesale auctioneer for licensed automobile dealers only. His job entailed driving vehicles back and forth to the auction and washing cars. After defendant had been working for Southwest for about two weeks, it was discovered that a Cadillac Fleetwood Brougham, with a wholesale value of over $19,000, had disappeared from the lot.

In the course of investigating various Southwest employees, Phoenix police officers found the stolen vehicle parked in front of defendant's grandmother's house. The officer who searched the car found that it contained clothing, personal papers, and other property belonging to defendant. No bill of sale or other ownership papers were found. When defendant was arrested at Southwest, he had twelve keys to the Cadillac in his pocket.

At trial, defendant claimed that he had purchased the Cadillac from a Jim Colby, a licensed auto dealer whom defendant had allegedly met at the auction. Defendant testified to details of a privately arranged transaction between Colby and himself. He claimed that he had paid $1,800 down and had agreed to make further biweekly payments of $137 for a total price of $16,000. This testimony was uncorroborated. Defendant also claimed that he had received a bill of sale, which he had left in the glove compartment of the Cadillac. His defense at trial was that he neither knew nor had reason to know that the car had been stolen.

On appeal, defendant does not contend that the evidence presented at trial was insufficient to support the jury's verdict. In fact, were we reviewing only the sufficiency of the evidence, we would affirm the conviction. Defendant argues, however, that the trial court erred in instructing the jury that "[t]he purchase of stolen property outside the regular course of business permits a conclusion that the purchaser was aware of the risk that it had been stolen."

The challenged instruction, taken from Recommended Arizona Jury Instruction (R.A.J.I.) 18.025(c), expresses the inference set out in A.R.S. § 13–2305(3), which provides:

Proof of the purchase or sale of stolen property *by a dealer in property*, out of the regular course of business, or without the usual indicia of ownership other than mere possession, unless satisfactorily explained, gives rise to an inference that the person buying or selling the

property was aware of the risk that it had been stolen.

(Emphasis added.) [1]

Defendant contends that the inference in A.R.S. § 13–2305(3) applies only where a *defendant* is a dealer in property, and not where the defendant merely *purchases* from a dealer. He further argues that if the inference applies to defendants who are not dealers, then the instruction fails to comport with due process requirements of the 14th Amendment of the U.S. Constitution because no rational connection exists between the evidentiary or predicate fact and the inferred fact. *See Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *see also State v. Platt,* 130 Ariz. 570, 637 P.2d 1073 (App.1981). We agree with both contentions.

Although the Arizona courts have not yet squarely faced the question before us, we note that in *State v. Dean,* 129 Ariz. 17, 628 P.2d 54 (App.1981), Division 2 of this court held that the same instruction was improper where the defendant claimed that he had purchased the property in question at a swap meet. The court reversed the defendant's conviction because no evidence had been presented to establish that the *sellers* were dealers in property, and because "the effect of the instruction was to advise the jury that it could infer that anyone who buys property at a swap meet is aware of the risk that it is stolen." *Id.* at 18, 628 P.2d at 55.

Insofar as the decision in *Dean* might suggest that the inference in A.R.S. § 13–2305(3) could be applied to a non-dealer defendant, we disagree and decline to follow it. According to the plain wording of the statute, the inference applies only where the defendant is a "dealer in property." [2] No one in the instant case has suggested that defendant's job of shuttling

and washing cars somehow makes him a dealer.

We further note that in enacting A.R.S. § 13–2305, our legislature adopted Section 5 of the "Model Theft and Fencing Act" as proposed by Blakey and Goldsmith, *Criminal Redistribution of Stolen Property: the Need for Law Reform,* 74 Mich.L.Rev. 1511 (1976). The authors discuss the difficulty of obtaining persuasive circumstantial evidence of *mens rea* in order to convict "professional receivers masquerading as legitimate businessmen." *Id.* at 1572–73. In proposing the presumption codified in A.R.S. § 13–2305(3), the authors note that it:

> would give rise to an inference of recklessness whenever a dealer had made an unexplained purchase out of the ordinary course of business. This presumption would apply on proof of unrecorded transactions, the retention of nonitemized or bogus receipts, the possession of altered merchandise, unusual methods of payment, purchases from noninstitutional sources, or similar conduct, that is viewed as purchasing behavior not in the "usual course of trade."

*Id.* at 1587 (footnotes omitted). We do not believe that the facts necessary to support this inference are ordinarily within the knowledge of a non-dealer purchaser.

We draw additional support for our conclusion from R. Gerber, *Criminal Law of Arizona* 321 (1978):

> COMMITTEE COMMENT [State Bar of Arizona Committee on Jury Instructions]
> Source: A.R.S. Sections 13–2305(3) and 13–1802(A)(5); *cf.* RAJI Crimes 12B—Burglary—Possession of Recently Stolen Property.
> 1. *This inference applies only if the defendant is a dealer in property, i.e.,*

---

1. A.R.S. § 13–2305 contains two additional inferences, neither of which was the subject of an instruction in this case:

   1. Proof of possession of property recently stolen, unless satisfactorily explained, gives rise to an inference that the person in possession of the property was aware of the risk that it had been stolen or in some way participated in its theft.

   2. Proof of the purchase or sale of stolen property at a price substantially below its fair market value, unless satisfactorily explained, gives rise to an inference that the person buying or selling the property was aware of the risk that it had been stolen.

2. A.R.S. § 13–2301(B)(1) provides: "'Dealer in property' means a person who buys and sells property as a business."

"a person who buys and sells property as a business." A.R.S. § 13–2301(B)(1). "Dealer in property" is not used in the instruction because it is unlikely that there will be an issue as to whether the defendant is a dealer in property.

(Emphasis added.)

Finally, we find no merit in the state's argument that a purchase of property from a dealer outside the regular course of the dealer's business *ought* to give rise to an inference that the purchaser was aware of the risk that the property had been stolen. An inference is irrational, and therefore unconstitutional, if it cannot at least be said with substantial assurance that the inferred fact is more likely than not to flow from the proved fact on which it depends. *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). We cannot say that one who purchases property from a dealer, outside the dealer's ordinary course of business, is more likely than not to be aware of the risk that the property has been stolen. We conclude, therefore, that it was error to give the instruction in the instant case.

However, defendant did not object to the instruction at trial. It is a rare case in which an improper instruction will warrant reversal where no objection was made. *State v. Zaragoza*, 135 Ariz. 63, 659 P.2d 22, *cert. denied*, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983). A criminal defendant who fails to object to an instruction at trial may not claim error on appeal unless the instruction rises to the level of fundamental error. *State v. Wussler*, 139 Ariz. 428, 679 P.2d 74 (1984). Fundamental error "goes to the foundation of the case, or … takes from a defendant a right essential to his defense." *State v. Mincey*, 130 Ariz. 389, 397, 636 P.2d 637, 645 (1981), *cert. denied*, 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982). Fundamental error is of such magnitude that the defendant could not possibly have received a fair trial. *State v. Hunter*, 142 Ariz. 88, 688 P.2d 980 (1984).

Defendant contends that the error was fundamental in his case because the in-

struction impermissibly shifted the burden of proof on the element of intent. When evaluating the constitutionality of an inference, our first task is to determine whether the inference is mandatory or permissive. *See Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). Mandatory inferences violate the due process clause if they relieve the state of its burden to prove, beyond a reasonable doubt, every essential element of an offense. *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). However, instructions that create a permissive inference do not ordinarily shift the burden of proof because the state is still required to convince the jury that the suggested conclusion should be inferred based on the predicate facts proven. *Id.; see also State v. Moya*, 136 Ariz. 534, 667 P.2d 234 (App.1983).

In *State v. Van Winkle*, 126 Ariz. 476, 616 P.2d 936 (App.1980), Division 2 of this court faced a question similar to the one before us. The defendant in that case testified that he had purchased the stolen items from a man named John, but produced no evidence to corroborate that testimony. The trial court instructed the jury, without objection, in accordance with *all* of the inferences set out in A.R.S. § 13–2305. On appeal, the court held, without specifically analyzing each inference, that inasmuch as the inferences were permissive, any error committed was not fundamental. *Id.* at 477, 616 P.2d at 937.

■ We have held that an instruction based on A.R.S. § 13–2305(1) [3] will be constitutional if stated in permissive fashion. *State v. Mohr*, 150 Ariz. 564, 724 P.2d 1233, 1238 (App.1986) (the phrase, *"may give rise* to the inference," is permissive). We believe that the language, "permits the conclusion," creates a permissive inference as well.

■ However, even a permissive inference may violate due process if, under the facts of the case, there is no rational way that the trier of fact could make the connection permitted by the inference. *Ulster*, 442 U.S. at 157, 99 S.Ct. at 2225, 60 L.Ed.2d

**3.** *See* footnote one, *supra.*

at 792. Having previously determined that no rational connection exists between purchase of property outside the seller's ordinary course of business and awareness by the buyer of the risk that the property is stolen, we must conclude that the giving of the instruction at issue violated defendant's right to due process and was therefore fundamental error.

Our final task is to determine whether this error requires reversal. If we determine that the error was harmless beyond a reasonable doubt, we need not reverse. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Anderson*, 110 Ariz. 238, 517 P.2d 508 (1973). Even fundamental error may not warrant reversal if evidence of guilt is so overwhelming that the error did not contribute to the guilty verdict. *Anderson*, 110 Ariz. at 241, 517 P.2d at 511.

Even though there is substantial evidence in this record that defendant knew or had reason to know that the vehicle in question was stolen, we cannot find, beyond a reasonable doubt, that the erroneous instruction did not contribute to the guilty verdict. To the contrary, it is entirely possible that the jury believed defendant's story, but nevertheless convicted him based solely on the inference allowed by the instruction.

Accordingly, we reverse the judgment and sentence and remand the matter for a new trial.

Reversed and remanded.

CONTRERAS, P.J., concurs.

FROEB, Judge, dissenting:

The defendant worked at a wholesale automobile auction where he met Jim Colby, a licensed auto dealer. From this there arose a private transaction between the two for the sale by Colby to defendant of the 1985 Cadillac. Apparently no bill of sale or ownership papers accompanied the sale.

The basis for defendant's claim that the conviction should be reversed is the jury instruction which stated, "The purchase of stolen property outside the regular course of business permits a conclusion that the purchaser was aware of the risk that it had been stolen."

The instruction was taken from Recommended Arizona Jury Instruction 18.025(c) and expresses the statutory inference set forth in A.R.S. § 13–2305(3) which provides:

Proof of the purchase or sale of stolen property by a dealer in property, out of the regular course of business, or without the usual indicia of ownership other than mere possession, unless satisfactorily explained, gives rise to an inference that the person buying or selling the property was aware of the risk that it had been stolen.

In my opinion, the statute applies here and supports the instruction. Where I differ with the majority is my reading of the statute to permit its application where the seller and not the buyer is the car dealer. In my view, if a car buyer buys a car from a car dealer outside the regular course of business, the buyer is signaled that there is a risk that something may be wrong, particularly where he is not given sale papers in the transaction. A.R.S. § 13–2305(3) translates this risk into a permissive inference where there is a charge of trafficking in stolen property. The instruction in this case presented the permissive inference to the jury.

It appears that Division Two of this court has reached the same conclusion in *State v. Dean*, 129 Ariz. 17, 628 P.2d 54 (App.1981). The implication of the decision is to the effect that the inference in A.R.S. § 13–2305 would apply to an ordinary buyer who buys merchandise from a dealer out of the regular course of business.

The majority notes the comment from R. Gerber, *Criminal Law of Arizona* 321 (1978), which states the inference of A.R.S. § 13–2305 applies only if the defendant is a "dealer in property." Since the plain language of the statute does not read that way, I would reject the comment in the treatise.

The facts of this case provide an excellent example of when a non-dealer defend-

ant should have been aware of the risk the property was stolen when buying from a dealer. Here, the defendant knew the person who allegedly sold him the car was a dealer in automobiles. The fact that the defendant was not provided ownership papers or even a bill of sale for a $16,000 to $19,000 Cadillac should have raised questions in the defendant's mind that the sale was not what it purported to be. This certainly was not a sale in the regular course of business and is exactly the situation addressed by the inference in A.R.S. § 13–2305(3).

In my opinion the instruction was not error and I would affirm the defendant's conviction and sentence.

Finally, as the majority notes, there was no objection by defendant to the instruction. Although I find the instruction was proper, if it were error, I would join the majority view that it was fundamental under the facts of this case.

I would affirm the conviction and sentence.