IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

In re the Matter of:

U.S. CURRENCY ($39,500.00 DOLLARS)

_____

STATE OF ARIZONA, *Plaintiff/Appellee*,

*v.*

JERRY JOHNSON, *Claimant/Appellant*.

No. 1 CA-CV 21-0060
FILED 11-29-2022

_____

Appeal from the Superior Court in Maricopa County
No. CV2020-012190
The Honorable Randall H. Warner, Judge

**REVERSED AND REMANDED**

_____

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Dallen Gardner
*Counsel for Plaintiff/Appellee*

Diggs Law PLC, Phoenix
By Keith Everett Diggs
*Co-Counsel for Claimant/Appellant*

Institute for Justice, Arlington, Virginia
By Dan Alban
*Co-Counsel for Claimant/Appellant*

Martinet Law, Phoenix
By Philippe Martinet
*Co-Counsel for Claimant/Appellant*

Goldwater Institute, Phoenix
By Stephen E. Silverman
*Counsel for Amicus Curiae*

---

**OPINION**

Presiding Judge Peter B. Swann delivered the opinion of the court, in which Judge David D. Weinzweig and Judge Paul J. McMurdie joined.

---

**S W A N N**, Judge:

**¶1** This is an appeal from the superior court's orders denying Jerry Johnson's claim to $39,500 cash and entering a judgment of forfeiture. We reverse and remand because the court impermissibly considered whether there was probable cause for the forfeiture in finding that Johnson failed to meet his burden of proving ownership of the money under A.R.S. § 13-4310(D) (2017)[1], and Johnson in fact proved he owned the money by a preponderance of the evidence.

**FACTS AND PROCEDURAL HISTORY**

**¶2** On August 17, 2020, the Drug Enforcement Bureau of the Phoenix Police Department (the "Bureau") received Johnson's travel itinerary from a confidential informant. According to the itinerary, Johnson was flying with a checked bag from North Carolina to Phoenix, he would be in Phoenix for less than 48 hours, and he had booked the flight less than 24 hours before departure. The Bureau conducted a background check on

---

[1]     We cite the 2017 version of the applicable statutes because revisions have occurred since the superior court's orders that would have been material to this case had it arisen after the revisions. Most importantly, in 2021, the legislature amended the statutory forfeiture scheme to require that forfeiture arise from an actual criminal conviction. 2021 Ariz. Sess. Laws, ch. 327, § 12 (1st Reg. Sess.) (H.B. 2810).

Johnson, which revealed several drug-related arrests. Based on this information, the Bureau flagged Johnson as a probable drug courier and decided to confront him on arrival.

¶3        Three detectives waited for Johnson at baggage claim. Johnson consented to a search, and the detectives found $39,500 in cash between Johnson's two bags. Johnson signed a disclaimer of ownership, and the detectives seized the money.

¶4        Johnson was never charged with a crime, but the state began forfeiture proceedings, filing a notice of seizure for forfeiture and a notice of pending forfeiture in the superior court under A.R.S. § 13-4307. Johnson timely objected to the forfeiture and avowed that he owned the money. *See* A.R.S. § 13-4311(D), (E). The state then filed a complaint alleging that the money was used or intended to be used in a transaction involving prohibited drugs, and constituted proceeds of a transaction involving prohibited drugs. The state also alleged that Johnson knew or had reason to know that he was transporting and concealing racketeering proceeds. *See* A.R.S. §§ 13-2314(G)(3), -2317(B). Johnson filed an answer and requested a probable cause hearing. *See* A.R.S. § 13-4310(B). The superior court issued an order to show cause. *See id.*

¶5        The court properly began the probable cause hearing by having Johnson prove he owned the money by a preponderance of the evidence pursuant to A.R.S. § 13-4310(D). Johnson testified that he received the money from two sources: his trucking business and a $9,000 loan from his uncle. He said he flew to Phoenix to buy a truck at auction for his business, and brought cash because he thought he would get a better deal than if he financed the truck. As proof of ownership, Johnson presented his tax returns from 2015 through 2018; an account statement, which had a balance of over $42,000 and showed a withdrawal of over $18,000; a document showing transfers of over $19,000 to Johnson's account; an affidavit in which Johnson's uncle avowed he loaned Johnson $9,000 to purchase a truck for his business; and evidence of Johnson's trucking business. During the hearing, the court twice said that Johnson met his burden of proving ownership because "he[ ] testified that [it] was his cash, and . . . that's sufficient."

¶6        Even so, the state asked the court to reserve any decision on ownership until the state presented its evidence, and the court agreed. The state informed the court that it would "give . . . the probable cause part, too, so we can kill two birds with one stone." As evidence of probable cause, the state called one of the detectives who confronted Johnson at the airport

to testify how Johnson fit the drug courier profile. The detective testified that drug couriers usually book flights 24 to 48 hours before departure and often have quick turnaround trips. He testified that drug couriers often travel with a large sum of cash to avoid bank records of the transaction, store the cash in bundles secured by rubber bands, and place it in a checked bag to evade detection by airport officials. The detective identified Arizona as a drug-source state because of its proximity to Mexico and testified that the cash involved in drug transactions flies from east to west while drugs fly from west to east.

¶7        Johnson fit this profile. He booked a flight from North Carolina to Arizona less than 24 hours before departure. He was traveling with $39,500 in cash, most of which was stored in rubber-band bundles in his checked bag, and a detective said the money smelled like marijuana. His return flight was less than 48 hours after he landed in Phoenix. Finally, Johnson has a prior drug conviction.[2]

¶8        To disprove ownership, the detective stressed that Johnson did not know how much money he had in his bags. Before the detective searched Johnson's bags, Johnson informed the detective that he had $10,000 in cash in his suitcase. But as the detective's search revealed more money, Johnson claimed to be carrying anywhere from $10,000 to $40,000, stating that he "really didn't know" how much he had on him. The detective also identified Johnson's conflicting statements about the source of the money. At the airport, Johnson said he had borrowed money from his mother and sisters. But at the hearing, Johnson presented evidence that he borrowed money from his uncle. The detective pointed out inconsistencies in Johnson's statements about his return flight. In his verified claim, Johnson said he planned to purchase the truck and drive it back to North Carolina, despite booking a return flight for two days after he arrived. But Johnson testified that he was only going to inspect the truck because the auction was not for another week and there was no guarantee he would purchase the truck. He also said that he made a mistake in booking his return flight and planned to stay in Phoenix until the auction. Finally, the detective questioned Johnson's purported reason for the trip because the auction no longer accepted in-person bidding or cash

---

[2]        These facts, taken together, prove nothing. "A drug courier profile is a loose assortment of general, often contradictory, characteristics and behaviors used by police officers to explain their reasons for stopping and questioning persons about possible illegal drug activity." *State v. Lee*, 191 Ariz. 542, 544, ¶ 10 (1998). Arizona prohibits the use of such evidence to prove substantive guilt in criminal cases. *Id.* at 545, ¶ 12.

payments, which Johnson would have learned when he visited the auction's website.

¶9        The superior court found that Johnson failed to prove he owned the money by a preponderance of the evidence.  The court found that Johnson's testimony was "not believable."  It reasoned that "[a]s between two possibilities—that [Johnson] flew with his own cash to possibly buy a truck, or that [Johnson] was transporting the proceeds of drug transactions—the latter is more likely."  The court never reached the issue of probable cause.  Accordingly, the court denied Johnson's claim to the money.  With no claims of ownership in the money remaining at the end of the statutory period to contest the forfeiture, the state moved for a judgment of forfeiture, which the court granted.  *See* A.R.S. §§ 13-4311(D), -4314(A).

¶10       Johnson appeals.

## DISCUSSION

I.    THE SUPERIOR COURT ERRED BY CONFLATING EVIDENCE OF PROBABLE CAUSE WITH EVIDENCE OF OWNERSHIP IN FINDING THAT JOHNSON FAILED TO PROVE OWNERSHIP OF THE MONEY.

¶11       Johnson argues that the superior court improperly merged the standing inquiry with the merits inquiry by requiring him to prove the money was not connected to criminal activity to own the money.  *See* A.R.S. §§ 13-4310(B), (D), -4311(M).  He contends that the court's interpretation of § 13-4310(D) violated due process.  We review questions of statutory interpretation and constitutional law de novo.  *In re U.S. Currency in the Amount of $26,980.00 ("$26,980.00 I")*, 193 Ariz. 427, 429, ¶ 5 (App. 1998).

¶12       To contest a forfeiture action, a claimant must file a verified claim that meets the requirements of § 13-4311(E), which include "[t]he nature and extent of the claimant's interest in the property," "the circumstances of the claimant's acquisition of the interest in the property," and any facts supporting the claim.  When property is seized without a prior judicial determination of probable cause, the claimant may request a hearing on the sole issue of whether probable cause for the forfeiture then exists.  A.R.S. § 13-4310(B).  In any judicial forfeiture hearing, the claimant must prove by a preponderance of the evidence that he owns the property before any other evidence is taken.  A.R.S. § 13-4310(D).  The state may, but need not, rebut the claimant's ownership interest.  *Id.*  If the claimant proves ownership by a preponderance of the evidence, the court then collects

evidence and determines whether the state has probable cause for the forfeiture. *See* A.R.S. § 13-4310(B), (D).

¶13        The burden of proving probable cause is on the state. A.R.S. § 13-4310(B); *In re U.S. Currency in the Amount of $315,900.00*, 183 Ariz. 208, 211 (App. 1995). If the state fails to prove probable cause for forfeiture of the property, the property must be returned to the claimant pending a final hearing on whether the property is subject to forfeiture. A.R.S. § 13-4310(B). If the state proves probable cause for the forfeiture, the property remains in the state's possession until the forfeiture hearing. *Id.* At the forfeiture hearing, the state has the burden of proving by clear and convincing evidence that the property is connected to criminal activity and subject to forfeiture. *See* A.R.S. § 13-4311(M).

¶14        In finding that Johnson failed to prove ownership by a preponderance of the evidence, the court relied in part on evidence of probable cause for the forfeiture, including that Johnson was carrying cash for the truck rather than using a bank, the money was hidden and stored in a suspicious manner, and there were several indicia of criminal activity present, including the last-minute flight purchase, the short trip, and that Johnson was carrying "so much cash" that smelled like marijuana. But evidence that Johnson fit the drug courier profile, by the state's own argument, went to probable cause, not ownership. Accordingly, the court committed legal error by considering evidence of probable cause in finding that Johnson failed to prove ownership. *See* A.R.S. § 13-4310(D). This was not a trivial or technical error—by using evidence of probable cause to defeat Johnson's claim of ownership, the court effectively transformed evidence of probable cause into a substitute for the clear and convincing proof of criminal activity that § 13-4311(M) requires.

¶15        Johnson argues that if § 13-4310(D) requires a claimant to prove that his ownership is not connected to criminal activity, the statute violates due process. The statute as written did not violate due process. As discussed above, the statute requires a claimant to prove ownership by a preponderance of the evidence. A.R.S. § 13-4310(D). This is a low burden. During Johnson's presentation of evidence, the superior court correctly acknowledged that any evidence of ownership, including a claimant's testimony that the property is his, without evidence that the property belonged to someone else, will likely be sufficient to prove ownership. So even if a claimant traveled with money to participate in a drug transaction, the claimant could still prove he owned the money. A person may own ill-gotten gains.

¶16        But the manner in which the court applied the statute to Johnson violated due process. By conflating evidence of probable cause for the forfeiture with proof of ownership, the court placed the burden on Johnson to prove the money was not connected to criminal activity—merely to have standing to challenge the forfeiture. *But see In re U.S. Currency in the Amount of $315,900.00*, 183 Ariz. at 216 ("[T]here is nothing even remotely criminal in possessing . . . a large sum of cash.") (internal quotation marks and citation omitted). The burden of proving that property is connected to criminal activity and thus subject to forfeiture is a burden placed squarely on the state under § 13-4311(M). By shifting this burden to Johnson, the court violated due process. *See Nelson v. Colorado*, 137 S. Ct. 1249, 1256 (2017) ("[T]o get their money back, defendants should not be saddled with any proof burden. Instead, . . . they are entitled to be presumed innocent."); *see also Harjo v. City of Albuquerque*, 307 F. Supp. 3d 1163, 1210–11 (D.N.M.), *modified*, 326 F. Supp. 3d 1145 (D.N.M. 2018) (holding that a forfeiture ordinance requiring a claimant to prove her innocence creates a risk of erroneous deprivation violating due process).

II.        JOHNSON PROVED OWNERSHIP OF THE MONEY BY A PREPONDERANCE OF THE EVIDENCE.

¶17        Johnson also argues that he met his burden of proving ownership. "[W]hether a claimant has proven ownership by a preponderance of the evidence is a question of fact." *In re U.S. Currency in Amount of $26,980.00 ("$26,980.00 II")*, 199 Ariz. 291, 295, ¶ 9 (App. 2000). We accept the court's factual findings unless clearly erroneous. *Id.* "[W]e do not reweigh conflicting evidence or redetermine the preponderance of the evidence, but examine the record only to determine whether substantial evidence exists to support the trial court's action." *Id.* at ¶ 10 (citation omitted).

¶18        Stripped of the evidence pertaining to probable cause, the record does not support the court's finding that Johnson failed to prove ownership by a preponderance of the evidence. The court could properly have considered the conflicting evidence about which of Johnson's relatives some of the funds came from, the disclaimer of ownership, and Johnson's lack of knowledge about how much money he was carrying, because this evidence goes toward the credibility of his claim of ownership. *See In re U.S. Currency in the Amount of $315,900.00*, 183 Ariz. at 211 (assessing the credibility of witnesses is a matter clearly within the province of the trier of fact). But the court went beyond this evidence, despite its acknowledgment at the hearing that Johnson *had* proved ownership.

¶19 The state argues that Johnson failed to prove ownership, but if it is not Johnson's money, then whose money is it? The state failed to introduce any evidence of who owned the money. *See $26,980.00 II*, 199 Ariz. at 295, ¶ 11 (finding the state's evidence that the claimant could be an intermediary in a drug transaction fell short of affirmative evidence that another individual was the true owner). And no one else filed a claim for the money. Accordingly, we hold that the court erred in finding that Johnson did not meet his burden of proving ownership when he presented evidence of ownership, and the state failed to present any evidence of who the true owner was.

¶20 Our determination that Johnson met his burden of proving ownership by a preponderance of the evidence comports with the aims of the standing requirements under § 13-4311(E) and § 13-4310(D). The standing requirements in forfeiture cases exist because the "danger of false claims in these cases is substantial." *In re $70,269.91 in U.S. Currency*, 172 Ariz. 15, 20 (App. 1991) (citation omitted). Here, the danger of false claims is slight. The detectives seized the money directly from Johnson. Johnson filed a timely verified claim asserting that he owned the money. He presented testimony and documentary evidence that the money consisted of income from his trucking business and a loan from his uncle. The state did not present evidence that someone else owned the money, nor were any other claims filed. *See Wohlstrom v. Buchanan*, 180 Ariz. 389, 393 (1994) (finding the state's concerns of protecting against fraudulent claims were alleviated where the claimant asserted that he owned the money, the money was taken directly from the claimant's possession, and no one else claimed an interest in it). And the superior court acknowledged twice that Johnson proved ownership before the state put on its evidence.

## CONCLUSION

**¶21** The court committed legal error by considering evidence of probable cause in finding that Johnson did not prove he owned the money by a preponderance of the evidence. Considering the evidence of ownership presented by the parties, the court also erred in finding that Johnson did not meet his burden of proving he owned the money by a preponderance of the evidence. Accordingly, we reverse the orders denying Johnson's claim and entering a judgment of forfeiture, and remand the matter for further proceedings.



AMY M. WOOD • Clerk of the Court
FILED: AA